By the Court, Bronson, J.
It is quite clear that the statute foreclosure of the mortgage to Bunner did not cut off the ..lien of the judgments. (2 R. S. 546, § 8.) Mather & Marvin had the right to come in and redeem from the purchaser. Nor do I see how the assignment to Allen could destroy the lien. Although he consulted with the assignees and intended the purchase for their benefit, he took the assignment in his own name and gave his own notes for the purchase money! At law, he must, I think, be regarded as the owner of the judgments: and as such he stood in the place of Mather & Marvin at the time the promise was made on which the action is founded. He might have redeemed from the defendant, who had acquired the title of the purchaser under the Bunner mortgage. In other words, the judgments were still subsisting liens upon the property.
If we are at liberty to look at the case as it would be viewed in a court of equity, it will not change the result. The assignees did not intend by the purchase to extinguish the. judgments. On the contrary, they took an assignment in the name of a third person for the very purpose, as we must presume, of keeping the judgments on foot. This was not injurious to the creditors whom they represented. The real estate of the plaintiff was not assigned to them, and by purchasing the judgments and causing them to be satisfied out of the real estate, they relieved the trust fund to be derived from the personal property from the burden of these two debts, and thus increased their means of satisfying the other creditors.
But whether the purchase was beneficial to the creditors or not, I think a court of equity would not declare the judgments satisfied. It may be true, as the defendant insists, that the trustees could not deal in this way with the trust fund; and then it is quite clear that they could not make a profit to themselves by the transaction. When a trustee misapplies the funds in his hands, the loss, if a loss results, will fall upon him; and if he make a profit, he must account for it to the cestui qué trust. If the purchase of the judgments was an unauthorized use of the *531 fund in the hands of the assignees, the creditors whom they represent might either have claimed the benefit of the purchase, in which case they would stand as the equitable owners of the judgments; or they might -have treated it as a wrong done to them, and call on the assignees to account for the money paid for the judgments. Had the creditors taken the latter course, it would not have worked a satisfaction of the judgments, but they would have belonged to Grant, Morgan & Hatch—not as assignees, but in their oxvn right. A court of equity would not go beyond requiring them to account for the money, and overturn their title to the property purchased with the trust fund. That would be a double punishment.
The formal legal title to the judgment at the time of the promise was in Allen. But if we regard him as a trustee, and look for the equitable title, we shall find it either in the assignees for the benefit of the plaintiff’s creditors, or in the assignees in their own right; and in either case the judgments were a lien on the land at the time of the promise. If the lien continued, it follows of course that the owner of the judgments, whoever that owner may be, was entitled to the surplus money arising from the sale after satisfying prior incumbrances. The plaintiff has therefore succeeded in making out a breach of the defendant’s agreement.
The next inquiry is, whether there was a sufficient consideration for the defendant’s promise. And here I am not able to perceive any serious difficulty in the case.. The property was of sufficient value to satisfy all the incumbrances. The plaintiff, who was personally bound by the judgments, had an interest in having them satisfied by the sale; and the defendant was willing to take the property and, pay the judgments, if he could be relieved from the necessity of raising and paying the money into court. The plaintiff thereupon withdrew his bid, and permitted the defendant to become the purchaser without competition, on his undertaking to pay off the judgments; That there was a sufficient consideration for the promise I cannot doubt.
*532 As the plaintiff’s deed to the defendant was a mere quit claim, it imposed no obligation on the plaintiff to pay off the judgments for the defendant’s benefit. The defendant took the land subject to the lien of the judgments. And although the plaintiff had parted with the equity of redemption, yet as the judgments were a personal charge, he had an interest in having them satisfied. He had the same right as any one else to bid at the sale under the Varick mortgage, and if he had become the purchaser and thus satisfied the judgments, he would have obtained an equivalent in the title to the land, and the defendant would have lost all that he acquired by the sale under the Bunner mortgage. The plaintiff relinquished his right to purchase, on the defendant’s undertaking to pay off the judgments. There was a loss or the relinquishment of a right by one party, and a benefit secured to the other; and it seems impossible to deny that there was a sufficient consideration for the promise.
Although Allen, or. the trustees, or some other third person, might derive a benefit from the performance of the defendant’s undertaking, yet as there was an express promise to the plaintiff, and he had a personal interest in its performance, the action was well brought in his name.
New trial denied.